IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

CONSOLIDATED ACTION

| | | |
|---|---|---|
| GEORGE REYNOLD EVANS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 7:15-CV-252-BO |
| CHRISTOPHER CAPPS, *et al.*, | ) ) ) | |
| Defendants. | ) | |
| | | |
| GEORGE REYNOLD EVANS, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 7:17-CV-4-BO |
| MICHAEL GROOM, *et al.*, | ) ) ) | |
| Defendants. | ) | |

ORDER

This cause comes before the Court on the memorandum and recommendations (M&Rs) of United States Magistrate Judge Robert B. Jones, Jr. recommending that the Court grant five pending motions for summary judgment filed by defendants. Plaintiff, who proceeds *pro se*, has timely filed what he has captioned a motions of rebuttal in response to the M&Rs, which the Court construes as his objections to the M&Rs. For the reasons that follow, the Court ADOPTS the M&Rs and GRANTS the pending motions for summary judgment.

## BACKGROUND

This consolidated action concerns plaintiff's federal civil rights and related state law claims arising out of an incident which occurred on March 30, 2014, in Columbus County, North Carolina. During the incident, plaintiff, who had been pursued by several law enforcement agencies in a high-speed vehicle chase which crossed state and county lines, was shot approximately forty-three times in approximately twelve seconds. The following facts are relied upon by Magistrate Judge Jones as undisputed. On March 29, 2014, defendant Groom, a detective with the Jacksonville Police Department, responded to the shooting of plaintiff's wife at a restaurant in Jacksonville, North Carolina, whereupon he discovered that the shooter had fled in the victim's vehicle and that the victim and another eye-witness identified plaintiff as the shooter. Warrants for plaintiff's arrest were issued at 8:00 a.m. on March 30, 2014. Defendant Keller, a detective with the Jacksonville Police Department, applied for and received an order from a Superior Court Judge under 18 U.S.C. § 3122 authorizing the installation and monitoring of a pen register and/or trap and trace device with respect to plaintiff's cell phone. Plaintiff's location was ultimately discovered through the use of a GPS tracking device that had been installed by the seller of the vehicle plaintiff was alleged to be driving, defendant Mills. Plaintiff was discovered leaving a gas station in Horry County, South Carolina, and was pursued by South Carolina law enforcement. When plaintiff crossed back into Columbus County, North Carolina, deputies from the Columbus County Sheriff's Office pursued plaintiff in a high-speed chase. The deputies were notified that plaintiff had outstanding warrants for attempted murder and that he was believed to be armed and dangerous.

State Highway Patrol officers later took the lead in the vehicle chase, which ended on Highway 74 near Lake Waccamaw, North Carolina when plaintiff drove his car into the grassy median. Plaintiff exited the vehicle with a firearm, specifically a handgun, in his right hand.

Plaintiff failed to respond to commands by law enforcement officers to drop his weapon and surrender; instead, plaintiff began to walk toward the westbound lanes of Highway 74. Defendant Sergeant Gore was behind plaintiff at this time, and, with his service weapon drawn, began advancing toward plaintiff. Plaintiff turned toward Gore, with his arm still outstretched holding the handgun. The defendant law enforcement officers began to fire at plaintiff, discharging approximately seventy-one rounds. Plaintiff fell to the ground after approximately seven seconds of shooting. After plaintiff fell to the ground, Gore raised his arm, indicating to fellow law enforcement officers to cease fire. One more round of ammunition was fired after Gore gave the cease-fire instruction, and officers proceeded to render first-aid to plaintiff and contact emergency medical personnel.

On March 10, 2017, plaintiff was convicted by an Onslow County, North Carolina jury of, *inter alia*, assault with a deadly weapon with intent to kill or inflict serious injury in connection with the shooting of his wife. On December 4, 2017, plaintiff entered an *Alford* plea to charges of assault with a firearm on a law enforcement officer and fleeing/eluding arrest with a motor vehicle in connection with the above recounted events on March 30, 2014. *See North Carolina v. Alford*, 400 U.S. 25 (1970) (allowing a defendant to consent to punishment without admitting to participating in the crime).

Plaintiff filed case No. 7:15-CV-252-BO against defendants in November 2015, and in June 2017, plaintiff's first-filed action was consolidated with a second-filed action, No. 7:17-CV-4-BO, which plaintiff had filed in state court and which defendants removed to this Court on the basis of its federal question jurisdiction. [DE-1; 129]. In his consolidated complaint, plaintiff has alleged claims under 42 U.S.C. § 1983 for excessive force, equal protection violations, due process violations, cruel and unusual punishment, as well as claims of supervisory liability, pattern or

3

practice of disregarding constitutional rights, and failure to train/deliberate indifference against Sheriff Hatcher. Plaintiff has further alleged claims under 42 U.S.C. §§ 1985 and 1988, as well as claims for violations of the North Carolina Constitution and laws, including claims for negligence, gross negligence, and intentional infliction of emotional distress. By order entered March 26, 2018, and amended on May 15, 2018, the Court referred several pending motions to Magistrate Judge Jones for ruling and referred three of the pending motions for summary judgment to Magistrate Judge Jones for entry of a memorandum and recommendation. [DE 241]. On August 16, 2018, the Court referred the remaining two motions for summary judgment to Magistrate Judge Jones for entry of an M&R. Magistrate Judge Jones has recommended that summary judgment be entered in defendants' favor on all of plaintiff's claims.

## DISCUSSION

A district court is required to review *de novo* those portions of an M&R to which a party timely files specific objections or where there is plain error. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985). The district court is only required to make a *de novo* determination of those specific findings to which the plaintiff has actually objected. *See Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

The Court has reviewed the M&Rs and finds no plain error. Accordingly, the Court proceeds to consider plaintiff's timely specific objections. Plaintiff challenges the following portions of the recommendation to grant the motions for summary judgment filed by the Columbus County Sheriff's defendants,[1] the State Highway Patrol defendants, and defendants City of Jacksonville and Groom [DE 271]: striking plaintiff's declaration; defendant Grooms' warrantless use of GPS monitoring; whether the video evidence supports that there is a genuine issue of

---

[1] The Court adopts the grouping of defendants used in the relevant M&R. *See* [DE 271 at 1-2].

material fact as to the amount of force used; whether the M&R correctly determined there was a policy in place on firearms prior to January 16, 2015; and whether the M&R correctly resolved the state law claims. Plaintiff has raised the following objections to the recommendation to grant Mills and Keller's motions for summary judgment: objections arising out of the GPS tracking of the vehicle plaintiff was driving and the affidavit filed by Keller in support of the application for pen register and/or trap and trace device.

I.  Motions to strike[2]

Plaintiff invoked his Fifth Amendment privilege against self-incrimination in response to defendants' requests for admissions and deposition questions. Plaintiff then submitted a declaration in support of his opposition to the motions for summary judgment in which he describes the events in question. "[T]he Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to [resist] a summary judgment motion." *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991). In other words, while a civil litigant is free to invoke the Fifth Amendment privilege, he cannot then use that privilege as a sword "to gain an unequal advantage against the party he has chosen to sue," *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087 (5th Cir. 1979), by offering an unquestioned version of events. *Edmund*, 934 F.2d at 1308.

Plaintiff's argument that the pendency of his criminal charges required that he invoke his Fifth Amendment privilege, and thus that his declaration submitted after his criminal proceedings concluded should not be stricken, misses the mark – the question is not whether plaintiff appropriately invoked privilege, but rather what the proper effect is of plaintiff's decision to do so.

---

[2] Although Magistrate Judge Jones has ruled on the motions to strike, as non-dispositive pretrial motions, and has not entered a recommendation as to a ruling, the Court considers plaintiff's objection as an appeal from an order of a magistrate judge under Local Civil Rule 72.4.

5

*Wehling*, 608 F.2d at 1087. Here, the appropriate remedy, given the stage of the case and the resulting unfairness to defendants, is the striking of plaintiff's declaration. *Barker v. Int'l Union of Operating Engineers Local 150*, No. 08 C 50015, 2011 WL 6338800, at *3 (N.D. Ill. Dec. 19, 2011) (noting unfairness of admitting statements where party has not had opportunity to depose affiant and "flesh out the circumstances of her account and her motivations."). The decision to grant the motions to strike is affirmed.

II. Motions for summary judgment

A. Legal standards

The remaining objections by plaintiff concern the recommendation to grant the motions for summary judgment. In determining whether summary judgment should be allowed, the Court considers, whether, when viewing the evidence and the inferences in the light most favorable to plaintiff, genuine issues of fact remain for trial. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted).

The individual law enforcement defendants have also raised the defense of qualified immunity to claims made against them in their individual capacity. Qualified immunity shields government officials from liability so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established," *Melgar v. Greene*, 593

F.3d 348, 353 (4th Cir. 2010), and a court may exercise its discretion to decide which prong of the analysis to decide first based on the circumstances presented. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Where qualified immunity has been raised, viewing the facts and drawing the reasonable inferences in the light most favorable to the plaintiff generally means adopting the plaintiff's version of the facts. *Scott*, 550 U.S. at 127; *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). However, a court should not adopt a party's version of events when it is blatantly contradicted by the record. *Scott*, 550 U.S. at 380.

B. Fourth Amendment challenge to GPS search and pen register

The majority of plaintiff's objections to the M&Rs arise out of Grooms' use of a GPS tracking device to locate the vehicle plaintiff was driving after he fled the scene of his wife's shooting. Plaintiff contends there are genuine issues of material fact as to whether he was an owner or permissive user of the vehicle and whether he had an expectation of privacy in its whereabouts. As Magistrate Judge Jones held, however, the summary judgment record demonstrates that Grooms was informed that plaintiff's wife, Ms. Evans, owned the vehicle alone. [DE 192-2] Grooms Decl. ¶ 16; [DE 192-3] Mills Decl. ¶ 7. "To have standing to bring a Section 1983 claim alleging the violation of his property rights under the Fourth Amendment, [plaintiff] must: (1) assert his own property rights, and (2) allege an injury in fact." *Eiland v. Jackson*, 34 F. App'x 40, 42 (3d Cir. 2002); *see also Rakas v. Illinois*, 439 U.S. 128, 140 (1978) (standing to challenge a search under the Fourth Amendment depends on "whether the disputed search and seizure has infringed an interest of the [challenger] which the Fourth Amendment was designed to protect."); *Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted").

7

There is no suggestion in the record that Ms. Evans gave plaintiff permission to drive the vehicle, and plaintiff is not the record owner of the vehicle. Moreover, there is no reasonable expectation of privacy in a stolen vehicle, *United States v. Hargrove*, 647 F.2d 411, 412 (4th Cir. 1981), and whether or not plaintiff was later charged with possessing a stolen vehicle is not, as plaintiff suggests, dispositive of the inquiry here. In light of this, and the lack of any contrary evidence presented, plaintiff cannot demonstrate that he had a legitimate expectation of privacy in the vehicle. *Cf. United States v. Gibson*, 708 F.3d 1256, 1277 (11th Cir. 2013) (permissive borrower of vehicle has standing to challenge installation of GPS device); *United States v. Hernandez*, 647 F.3d 216, 220 (5th Cir. 2011) (permissive borrower of vehicle has standing to challenge GPS monitoring of movements on the highway). His claim arising out of the GPS search therefore fails.

Additionally, plaintiff has objected to the recommendation's alternative conclusion that, even if plaintiff has standing to challenge the GPS device as a warrantless search, his challenge fails because the GPS device in this instance was installed by a private third-party, defendant Mills, and not by the government itself. A search for Fourth Amendment purposes occurs when the government installs a GPS device on a target's vehicle and uses that device to monitor the vehicle's movements. *United States v. Jones*, 565 U.S. 400, 404 (2012). Here, the government did not install the GPS device, and thus no physical instruction by the government occurred. Absent physical intrusion by the government, no warrant was required, and no constitutional violation occurred in the warrantless use of the GPS device. *See also Jones*, 565 U.S. at 425 (Alito, J. concurring) (noting that if GPS monitoring can be committed without committing a technical trespass, "for example, [if] the Federal Government required or persuaded auto manufacturers to

8

include a GPS tracking device in every car—the [*Jones*] Court's theory would provide no protection.").

Plaintiff has also objected to the determination that defendant Mills, the owner of the used car dealership who installed the GPS tracking device on the vehicle, is not a state actor and therefore not subject to liability under 42 U.S.C. § 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993).

> A private party can be deemed a state actor in four contexts: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*Andrews*, 998 F.2d at 217. As to the circumstances which could be relevant here, there is no genuine dispute that Mills was not coerced by Grooms into committing an act which would be unconstitutional if done by the state, or that any state duty was delegated to Mills. Accordingly, Mills is properly not deemed to be a state actor and cannot be liable under § 1983.

Plaintiff also contends that he has submitted sufficient evidence to create a genuine issue of material fact as to whether defendant Keller was untruthful in his application for a warrant to track plaintiff's cell phone. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). A police officer "contravenes the Fourth Amendment when he procures a search warrant through the use of false statements, whereby a magistrate would not have otherwise found probable cause." *Unus v. Kane*, 565 F.3d 103, 124 (4th Cir. 2009). Authorization to utilize a pen register or trap/trace device requires a showing of probable cause. *See United States v. New York Tel. Co.*, 434 U.S. 159, 168 (1977). Probable cause exists where, as a result of a practical, common-sense consideration of all

9

of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Here, even excluding the portions of Keller's affidavit challenged by plaintiff, *see* [DE 260-2]; [DE 268], including whether the affidavit accurately described plaintiff's position in the restaurant parking lot prior to the shooting of plaintiff's wife, there existed probable cause sufficient to support the issuance of the order authorizing a pen register and/or trap and trace device. Specifically, Keller's affidavit states that plaintiff had been identified as having shot his wife, that plaintiff had fled in his wife's vehicle, and that plaintiff had, subsequent to the shooting, called his family members from the telephone number listed in the application. This is sufficient to support a probable cause finding, and no Fourth Amendment violation occurred.

In light of the foregoing findings that no Fourth Amendment violation occurred, Grooms and Keller, and Mills to the extent he could be deemed to be a state actor, are alternatively entitled to qualified immunity on plaintiff's Fourth Amendment claims arising out of the use of a GPS device and the application for a pen register and/or trap and trace device.

C. Excessive force

In his objections to the M&Rs, plaintiff contends that the video evidence that he submitted shows that he was shot by law enforcement officers with his hands up in the air, and that he continued to be shot even after he went down. Plaintiff contends that defendant Gore's testimony reveals that plaintiff did not point his weapon at him, and therefore law enforcement was not justified in firing at plaintiff. Plaintiff also contends that his video contradicts defendants' video, and thus creates a genuine issue of material fact. Plaintiff contends that there is no video of plaintiff pointing a gun, and that defendants fired ten rounds after plaintiff fell and lay helpless on

the ground. In essence, the Court construes plaintiff's filing as an objection to the finding that the force used was objectively reasonable.

At the outset, the Court can discern no contradiction between or discrepancies in the dashcam video evidence submitted by the parties. *Compare video footage at* [DE 58] and [DE 178]. Rather, the video evidence reveals that plaintiff exited his vehicle on the grassy median with his arms extended and parallel to the ground. [DE 178-2, B543-14-03 at 9:15-9:31]; [DE 58, "Barnes Car Video" at 14:21-14:22]. Plaintiff continues to walk away from his car while flexing and extending his elbows, his arms remaining either close-to-parallel to the ground or raised up toward his head. *Id.* As defendant Gore approaches plaintiff with his firearm drawn, plaintiff turns toward Gore with his arm extended toward Gore. [DE 178-2, B534-13-05 at 6:22-6:26]; [DE 58, "Barnes Car Video" at 14:22]. Gore's voluntary statement, [DE 222], further does not demonstrate that plaintiff was shot by other officers while his hands were in the air. Rather, Gore's statement specifically provides that "[o]nce [Gore] got approximately 10-15 yrds [sic] from [plaintiff], [plaintiff] turned toward [Gore] with his hands coming down, shots were fired." *Id.* at 2.

When determining whether the force used to effect a seizure was reasonable, a court must consider the facts and circumstances confronting the officers, and specific factors to be considered are the severity of the crime at issue, whether the suspect poses an immediate threat, and whether the suspect is actively resisting or attempting to flee. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Henry v. Purnell*, 652 F3d 524, 531 (4th Cir. 2011) (en banc). "A police officer may use deadly force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).

In determining whether the force utilized was objectively reasonable, the Court has considered the undisputed facts and plaintiff's version of the disputed facts, except where his version is contradicted by the video evidence. Undisputed is that law enforcement officers on the scene knew that plaintiff was a suspect in a shooting and that plaintiff had led multiple law enforcement agencies on a multi-state high-speed chase before his car stopped in the median of a four-lane public highway. Dashcam recordings reveal that the officers believed that plaintiff was armed when he exited the vehicle, *see, e.g.,* [DE 78, SHP Video Title 26 at 9:41-42] (officer stating on the radio "he's got a gun in his hand" after plaintiff exited his vehicle). Although plaintiff contends that he did not point his gun at defendant Gore, he does not deny he had a gun in his hand during the encounter.

While mere possession of a weapon is insufficient to support a finding that a suspect poses a threat of serious physical harm, "an armed suspect need not engage in some specific action— such as pointing, aiming, or firing his weapon—to pose a threat." *Cooper v. Sheehan,* 735 F.3d 153, 159 n.9 (4th Cir. 2013). Here, plaintiff, who had an outstanding arrest warrant for assault with intent to kill, was surrounded by multiple law enforcement vehicles and uniformed law enforcement officers on a public highway. Plaintiff had ignored commands to drop his weapon and surrender and was walking away from the officers. Plaintiff turned toward defendant Gore with his arm outstretched, pointing his hand in defendant Gore's direction. In these circumstances, it was objectively reasonable for the defendant officers to believe that plaintiff posed a threat of serious physical harm and that he was pointing a gun at Gore. *See Braswell v. Wiggs,* 139 F.3d 888 (4th Cir. 1998) (deadly force justified where suspect waived arm as if holding a weapon even where officers failed to warn suspect prior to shooting); *Slattery v. Rizzo,* 939 F.2d 213, 215 (4th Cir. 1991) (deadly force justified where officer reasonably believed suspect was threatening officer

with a weapon and where suspect had failed to comply with orders); *Gregory v. Zumult*, 294 F. App'x 792, 795 (4th Cir. 2008) (deadly force justified where suspect failed to comply with orders and was perceived threat to safety of officers).

The decision to use deadly force was not objectively unreasonable, nor was the number or timing of the shots fired. The fact that the officers fired approximately seventy-one rounds does not necessarily result in a finding that the force used was objectively unreasonable. *See Elliott*, 99 F.3d at 643 (number of shots fired not determinative of reasonableness). Indeed, where a suspect points a weapon at officers while attempting to flee, the use of multiple gunshots by multiple officers has been found to be an objectively reasonable response. *See, e.g., Hirpassa v. Prince George's Cty., Md.*, No. RWT 09CV2631, 2010 WL 2730651, at *5 (D. Md. July 9, 2010), *aff'd sub nom. Hirpassa v. Prince George's Cty. Gov't*, 406 F. App'x 739 (4th Cir. 2010). That the law enforcement officers continued to fire for a period after plaintiff fell to the ground was also objectively reasonable in light of the facts and circumstances. The video evidence reflects that there were twelve seconds of gunfire and that plaintiff was on the ground for five seconds before the shooting ended. The video evidence plainly shows that after the surrounding officers began shooting at plaintiff, Gore, who was the officer closest to plaintiff, raised his arm to indicate to the other officers to stop shooting, and the sound of gunfire ceases with the exception of one additional shot. [DE 178-2, B534-13-05 at 6:37];[DE 58, "Barnes Car Video" at 14:22]. Gore had the best vantage point to determine whether plaintiff, who was armed, continued to pose a serious threat, and when he made that determination, the shooting ceased. There was no break in gunfire, and all officers but defendant Gore were positioned far enough away from plaintiff that they could not readily determine whether he remained a threat. *Cf. Brockington v. Boykins*, 637 F.3d 503, 507 (4th Cir. 2011) (allegation that extent of suspect's injuries were evident to officer and that officer

13

stood over suspect and continued to shoot while suspect lay wounded on the ground sufficient to state a claim for excessive force).

Where "police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, 572 U.S. 765 (2014). The Court finds that the force used in this instance to seize plaintiff was objectively reasonable, and plaintiff's constitutional right was not violated. The law enforcement officer defendants are also, therefore, entitled to qualified immunity as to plaintiff's excessive force claim.

D. Failure to train claim against Sheriff Hatcher

Plaintiff's only specific objection to the M&R's resolution of his failure to train claim against Sheriff Hatcher is that plaintiff contends that his exhibit reveals that there was not a policy in place on firearms until January 16, 2015. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference is a "stringent standard of fault," requiring plaintiff to prove, in these circumstances, that Sheriff Hatcher "disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).

However, as the Court has determined that no violation of plaintiff's constitutional rights occurred, there can be no liability on the part of the Sheriff for inadequate training. *See Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001); *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999). Moreover, plaintiff's evidence would support only a single incident of allegedly unconstitutional conduct, which is generally insufficient to go forward on a claim for liability for

14

failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("a pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for failure to train.") (citation omitted). As a narrow exception to the general rule, section 1983 liability may be imposed in the absence of evidence of a pattern of constitutional violations only where the constitutional violation was the "highly predictable" result of the failure to train. *Bryan Cty.*, 520 U.S. at 409.

Plaintiff has failed to satisfy his evidentiary burden to go forward on such a claim, as the Columbus County defendants have proffered evidence that they have received the appropriate training which plaintiff has failed to rebut. *See, e.g.*, [DE 164-1] Hatcher Aff. ¶¶ 4-6; [DE 164-2] Barnes Aff. ¶¶ 2-3.

E. Section 1985 conspiracy claim

Plaintiff objects to the M&R's resolution of his § 1985 conspiracy claim, arguing that he has proven that a conspiracy existed between Grooms and the other deputies based on discriminatory animus. In order to establish a § 1985 violation, a plaintiff must "demonstrate with specific facts that the defendants were 'motivated by a specific class-based, invidiously discriminatory animus to deprive the plaintiff[] of the equal enjoyment of rights secured by the law to all.'" *Francis v. Giacomelli*, 588 F.3d 186, 196–97 (4th Cir. 2009) (internal alteration and citation omitted). The Fourth Circuit "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a summary judgment motion" and has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). Plaintiff has failed to present any evidence,

15

as opposed to argument, of racial discriminatory animus, and summary judgment in favor of the moving defendants is therefore appropriate.

F. State Constitution and state law claims

Plaintiff's objections to the M&R's resolution of his state constitution and state law claims center on defendants' decision to remove plaintiff's action filed in state court to be consolidated with his already pending federal case. Plaintiff has not made a specific objection to the resolution of the state law claims themselves, and the Court has found no clear error by the magistrate judge.

## CONCLUSION

The Court has considered the memorandum and recommendations of the magistrate judge in light of the applicable standards, including engaging in *de novo* review of those portions of the recommendations to which plaintiff filed specific objections, and finds that summary judgment in favor of all defendants is appropriate as to each of plaintiff's claims raised in this consolidated action. Accordingly, the Court ADOPTS the memorandum and recommendations [DE 271 & 276]. Defendants' motions for summary judgment [DE 161, 175, 191, 254, 259] are GRANTED. The clerk is DIRECTED to enter judgment accordingly in each of these consolidated cases and to close the files.

SO ORDERED, this ___ day of September, 2018.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE